IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FIRST PROFESSIONALS INSURANCE
COMPANY, INC.,

    Plaintiff,

v.

OSCAR F. FLORENDO, M.D.,
OSBEC MEDICAL OF SOUTHERN
ILLINOIS LLC, WAL-MART STORES,
INC., and KARA MANLEY,

    Defendants.                                    Case No. 11-cv-197-DRH

## ORDER

**HERNDON, Chief Judge:**

    This is a declaratory judgment action in which plaintiff First Professionals Insurance Company, Inc. ("First Professionals") seeks a declaration that it has no duty to provide coverage or defend defendants Oscar F. Florendo, M.D. ("Dr. Florendo") or Osbec Medical of Southern Illinois LLC ("Osbec Medical") in a lawsuit filed against defendants Dr. Florendo, Osbec Medical, and Wal-Mart Stores, Inc. ("Wal-Mart") in state court by defendant Kara S. Manley, as administrator of the Estate of Gary W. Manley (the "Estate"). Gary W. Manley ("Manley") allegedly died from an overdose of medication following treatment from a slip and fall at Wal-Mart. Dr. Florendo and Osbec Medical have filed a motion for summary judgment (Doc. 28), contending that they are entitled to summary judgment because there are no facts that Dr. Florendo knowingly or willfully made

misstatements or omissions of fact in the application for insurance. At issue is whether Dr. Florendo, on the basis of what he knew, believed his responses in his insurance application to be true. Because the Court finds genuine issues of material fact are in dispute as to whether Dr. Florendo told the truth, the motion for summary judgment (Doc. 28) is denied.

## I. Background

On February 22, 2008, Manley reportedly injured his back when he slipped and fell at a Wal-Mart store. During the course of his resulting medical treatment, Manley sought care from Dr. Florendo at Osbec Medical.[1] On June 10, 2008, Dr. Florendo prescribed Manley a Fentanyl transdermal patch. The next day Manley died.

Either that same day or the day after, David A. Moss, the Clinton County coroner, called Dr. Florendo and informed him that Manley had passed away. (Doc. 28-1, p. 3; Doc. 29-1, p. 9). According to Dr. Florendo's deposition testimony, Moss was a family friend and Dr. Florendo did not normally receive calls from the coroner's office when one of his patients died. (Doc. 29-1, p. 9-11). Moss may have asked for Gary Manley's medical records, but Dr. Florendo does not have any recollection and does not recall whether Moss knew the cause of death at that time. (Doc. 29-1, p. 11). Dr. Florendo asked Moss to let him know

---

[1] Dr. Florendo is the sole member of Osbec Medical, an Illinois limited liability company. Dr. Florendo is a resident of Missouri. First Professionals is a Florida corporation with its principle place of business in Florida. Thus, diversity jurisdiction is secure.

what he discovered. (Doc. 29-1, p. 13).

During the time Dr. Florendo treated Manley he was insured by ISMIE Mutual Insurance Company ("ISMIE"). On August 27, 2008, ISMIE sent Dr. Florendo a letter informing him that his ISMIE policy would not be renewed, effective January 17, 2009. (Doc. 29-1, p. 34). As a result, Dr. Florendo secured insurance coverage from Professional Liability Insurance Company of America ("PLICA"), effective from December 1, 2008, until December 1, 2009.

On September 24, 2008, Moss sent Dr. Florendo a letter enclosing copies of the autopsy report, toxicology report, and the death certificate for Manley. (Doc. 28-2, p. 1). The autopsy report concluded that Manley died from acute intoxication with Fentanyl. (Doc. 28-2, p. 9). Dr. Florendo testified in his deposition that he "felt that the conclusion that the coroner made in terms of why this patient had passed away was incomplete at the most and inaccurate at the least." (Doc. 29-1, p. 16). He said that the report did not cause him any concern about his decisions regarding the care he rendered to Manley. (Doc. 29-1, p. 17). Further, he testified that after reading the report it never occurred to him that somebody might claim that he did not do everything exactly the way that he should have in terms of treating Manley. (Doc. 29-1, p. 18). Dr. Florendo was aware, however, that some of these Fentanyl patches had been defective in the past and had previously led to litigation.

On October 30, 2008, the law firm of Strellis & Field sent to Dr. Florendo a request for Manley's medical records. (Doc. 28-5, p. 1). The letter requested Dr.

Page 3 of 12

Florendo's office to forward "copies of your medical records for treatment rendered to Gary Manley regarding injuries he sustained in a fall which occurred on February 22, 2008 along with an itemized bill for services rendered." (Doc. 28-1, p. 1). Dr. Florendo testified that he receives requests from lawyers approximately once per month.

On approximately November 2, 2009, Dr. Florendo, on behalf of himself and Osbec Medical, submitted an application for claims-made insurance with First Professionals. Patricia Parker, Obsbec Medical's practice manager, completed the handwritten part of the application. Dr. Florendo filled in the "yes" or "no" boxes in the application and is the person who signed the application. Question twenty of the application inquired whether the potential insured had "knowledge of any claim or circumstances that might give rise to a claim being made against you." Dr. Florendo answered in the negative. The signature page also contained the following language:

> I hereby affirm that the preceding statements and answers are accurate and complete to the best of my knowledge and understanding. I understand that this application acts as the foundation of the insurance contract, and that inaccurate or partial statements can invalidate my insurance coverage and, if deemed fraudulent, can possible lead to criminal and/or civil prosecution.
>
> . . . .
>
> The signature below confirms that:
> - ☐ I have no known losses or claims that have not been reported to my prior insurance carrier or any other source from which payment might be made;
> - ☐ I have no knowledge of facts or circumstances that relate to a medical incident(s) arising from professional

> ☐ services which could reasonably result in a claim that has not been reported to a prior insurance carrier;
> ☐ I have no knowledge of any request for medical records by a patient or his/her attorney which might result in a claim;
> ☐ I have no knowledge or information relating to service or services on a Board which might result in a claim; and
> ☐ I have no knowledge of any prior professional liability carrier refusing coverage for, or declining to accept a report of a medical incident, threat of claim, letter of intent, adverse result notice or attorney contact.

Sometime thereafter, First Professionals approved Dr. Florendo's application for insurance and issued a policy effective from December 1, 2010, until December 1, 2011, with a retroactive date of January 17, 2001.

On January 6, 2010, the Estate filed suit against Wal-Mart, Dr. Florendo, and Osbec Medical, alleging, as is relevant to this case, a wrongful death/negligence claim against Dr. Florendo and Osbec Medical on behalf of Manley. Specifically, the Estate alleged that on June 10, 2008, Dr. Florendo and Osbec Medical negligently prescribed a Fentanyl transdermal patch to Manley when he presented himself to Dr. Florendo and Osbec Medical with complaints of severe back pain that resulted in his death on June 11, 2008.

Sometime around January 26, 2010, a newspaper article was published indicating that the Estate had filed suit against Dr. Florendo and Osbec Medical in state court. Parker testified that this is when she first learned about the lawsuit. (Doc. 28-7, p. 4). That same day, Parker notified First Professionals of the claim. The summons in the underlying litigation was served on Dr. Florendo and Osbec

Medical on February 5, 2010. Dr. Florendo and Osbec Medical sought insurance coverage from First Professionals.

First Professionals investigated whether Dr. Florendo gave notice of the claim to his prior insurers and there are questions of fact in dispute as to what was revealed during that investigation. Nevertheless, First Professionals ultimately agreed to defend Dr. Florendo and Osbec Medical under a reservation of right, and on March 14, 2011, First Professionals filed a declaratory judgment action (Doc. 2) pursuant to 28 U.S.C. § 2201 against Dr. Florendo, Osbec Medical, Wal-Mart, and Kara Manley based upon diversity jurisdiction.

In the complaint, First Professionals alleged that on or about November 2, 2009, Dr. Florendo applied for insurance coverage with First Professionals, wherein he indicated in his application that he had no knowledge of any circumstances that might give rise to a claim. Based upon his application, First Professionals issued Dr. Florendo a professional liability insurance policy that became effective on December 1, 2009, but with an endorsement effective date of January 17, 2001. First Professionals alleges, however, that Dr. Florendo failed to disclose the circumstances surrounding the death of Manley, which he was aware of, and that any claim arising from those circumstances would not have been covered by the insurance policy had they been disclosed and that pursuant to the conditions set forth in the insurance policy, First Professionals does not have an obligation to defend or indemnify Dr. Florendo or Osbec Medical in the underlying litigation.

On April 21, 2011, Wal-Mart filed a motion to dismiss (Doc. 6) the complaint, contending that First Professionals failed to add all necessary parties, namely PLICA and ISMIE. The Court disagreed and denied that motion (Doc. 24). Dr. Florendo and Osbec Medical have now filed their motion for summary judgment (Doc. 28). That motion has been briefed and is denied for the reasons stated below.

## II. Standard of Review

In a diversity case, the Court applies state law to substantive issues. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). Federal law governs procedure. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). When neither party raises a conflict of law issue in a diversity case, as is the case here, the applicable law is that of the state in which the federal court sits. *Id*. Thus, Illinois law applies. Under Illinois choice of law rules, however, litigants can stipulate to which substantive law applies to their case so long as the stipulation is reasonable. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 n. 6 (7th Cir. 1995). The parties have cited to Illinois law. To the extent that the Illinois Supreme Court has not yet spoken to any of the issues before the Court, the Court shall apply the law as it would predict the Illinois Supreme Court would if deciding the case. *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001).

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

### III. Analysis

Dr. Florendo and Osbec Medical claim that they are entitled to summary judgment because there are no facts that Dr. Florendo knowingly or willfully made misstatements or omissions of fact in the application for insurance. First, Dr. Florendo and Osbec Medical contend that it is undisputed that Dr. Florendo and Osbec Medical were covered by insurance after Manley's death, yet Dr. Florendo refused or failed to inform his then insurers of a potential claim, thereby implicating that he did not believe a claim existed. Second, Dr. Florendo and Osbec Medical posit that it is undisputed that the law firm's medical records request did not in any way inform or put Dr. Florendo on notice of any potential

claim that the Estate was planning on filing a lawsuit against Dr. Florendo, as the request for medical records was related to a "slip and fall" that occurred on February 22, 2008, at Wal-Mart.  Lastly, Dr. Florendo and Osbec Medical maintain that had First Professionals inquired with Dr. Florendo as to why he was given a copy of the autopsy report they would have discovered that it was given to him as a courtesy by Moss, a family friend.  Accordingly, Dr. Florendo and Osbec Medical assert that the facts are clear and undisputed that Dr. Florendo did not have any actual knowledge that the Estate was contemplating filing a suit at the time he completed his application for insurance with First Professionals and therefore Dr. Florendo and Osbec Medical are entitled to judgment as a matter of law.

First Professionals responds by maintaining that the motion for summary judgment should be denied because there is a question of fact as to whether Dr. Florendo knew or should have known of the potential for a claim arising from the death of Manley.  First Professionals contends that Dr. Florendo should have answered question twenty on the insurance application in the affirmative because he was aware of Manley's death by virtue of the cornoer's office, was aware that the reported cause of death was Fentanyl, a drug he had prescribed for Manley the day before he died, and was aware that lawyers had been hired to represent the Estate and had requested Manley's medical records.

Section 154 of the Illinois Insurance Code, 215 ILCS 5/1 *et seq.* (2012), provides, in relevant part, as follows:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

215 ILCS 5/154 (2012). "The statute establishes a two-prong test to be used in situations where insurance policies may be voided: the statement must be false and the false statement must have been made with an intent to deceive or must materially affect the acceptance of the risk or hazard assumed by the insurer." *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003) (citing *Campbell v. Prudential Ins. Co. of Am.*, 155 N.E.2d 9 (Ill. 1958)). "Under the statute, therefore, a misrepresentation, even if innocently made, can serve as the basis to void a policy." *Schwartz*, 786 N.E.2d at 1015.

"In cases where insurance applications contained the 'knowledge and belief' language, courts have not allowed insurers to seek refuge in the higher standard of accuracy encompassed by statute." *Schwartz*, 786 N.E.2d at 1016 (citing, e.g., *Skinner v. Aetna Life & Casualty*, 804 F.2d 148, 150 (D.C. Cir. 1986)). The addition of the "knowledge and belief" language to an application establishes a lesser standard of accuracy than that imposed under § 154, and therefore changes "from an inquiry into whether the facts asserted were true to whether, on the basis of what [the applicant] knew, the applicant believed them to be true."

*Schwartz*, 786 N.E.2d at 1016. "Thus, the response . . . must be assessed in light of the applicant's actual knowledge and belief." *Id.* at 1016-17. Nevertheless, "the presence of a 'knowledge and belief' provision in policy will not insulate an applicant's responses from all review." *Id.* at 1017. Accordingly, the Illinois Supreme Court has adopted the following test for examining responses to questions asked according to an applicant's knowledge and belief:

> 'The twin qualifiers [knowledge and belief] require[] that knowledge not defy belief ***. *** What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception-persons who having witnessed the Apollo landings, still believe the moon is made of cheese.'

*Id.* (quoting *Skinner*, 804 F.2d at 151).

Here, the application asked Dr. Florendo whether he had "*knowledge* of any claim or circumstances that might give rise to a claim being made against you." (Emphasis added). Further, the signature page asked Dr. Florendo to affirm that his answers were accurate and complete to the best of his "knowledge and understanding." Dr. Florendo then made several confirmations on the basis of his "knowledge." Based upon the addition of the "knowledge" and "knowledge and understanding" language added to the application, the Court finds that a lesser standard of accuracy than that required by § 154 applies to the case at hand. See *Schwartz*, 786 N.E.2d at 1016. Thus, the relevant inquiry changes

from an inquiry into whether the facts asserted were true to whether, on the basis of what [Dr. Florendo] knew, the applicant believed them to be true." *Id.*

On the basis of the record before the Court, the Court finds that this is a question of fact to be determined by the trier of fact. While Dr. Florendo asserts that he believed the statements in his application to be true, construing all facts and drawing all inferences in First Professionals' favor, a genuine issue of material fact exists as to whether, on the basis of what Dr. Florendo knew, he believed them to be true. After all, the trier of fact, could find Dr. Florendo's statement that he was telling the truth to be incredible in light of the evidence that First Professionals has produced. Therefore, Dr. Florendo and Osbec Medical's motion for summary judgment (Doc. 28) is denied.

### IV.  Conclusion

For the reasons stated above, Dr. Florendo and Osbec Medical's motion for summary judgment (Doc. 28) is denied.

**IT IS SO ORDERED.**

Signed this 28th day of August, 2012.

Digitally signed by David R. Herndon
Date: 2012.08.28 16:02:10 -05'00'

**Chief Judge**
**United States District Court**

Page 12 of 12